No. 21-6447

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

———————

## JONATHAN ANTHONY LEE TORRES,

*Appellant,*

**v.**

## NATHAN BALL, SERGEANT, DANE R. ONDERDONK, DEPUTY, AND TIMOTHY R. TAYLOR, DEPUTY,

*Appellees.*

———————

On Appeal from the United States District Court
For the Western District of North Carolina (1:19-cv-00094-MR)

———————

## REPLY BRIEF

———————

Daniel S. Harawa
*Counsel of Record*

Daniel J. Cook
Zachary L. Sanders
Sophie Spears
*Student Counsel*

*Counsel for Appellant*

NEW YORK UNIVERSITY
SCHOOL OF LAW
Federal Appellate Clinic
245 Sullivan Street
Room 620
New York, NY 10012
(212) 998-6430
dh33544@nyu.edu

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ II

REPLY BRIEF .......................................................................................... 1

I.    GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY
      JUDGMENT IN SGT. BALL'S FAVOR. ...................................... 3

      A.   There Are Material Disputes of Fact Over the Reason for the Stop. .... 3

      B.   There Are Material Disputes of Fact Over What Sgt. Ball Was Told
           by the CSI Before He Conducted the Stop. .......................... 5

      C.   There Are Material Disputes of Fact Over What Sgt. Ball Saw Before
           the Stop. ............................................................... 7

      D.   This Court Must Consider Mr. Torres's Sworn Pleadings When
           Deciding Whether There Are Issues of Material Fact in Dispute. ....... 10

      E.   This Court Must Consider Sgt. Ball's Police Report and How It
           Differs From His Summary Judgment Affidavit when Deciding
           Whether There Are Issues of Material Fact in Dispute. ..................... 12

II.   SGT. BALL LACKED REASONABLE SUSPICION TO BELIEVE MR.
      TORRES WAS DRIVING THE HONDA ACCORD BECAUSE THE
      VIRTUALLY ANONYMOUS CSI TIP WAS TOO VAGUE AND
      UNCORROBORATED TO SUPPORT REASONABLE SUSPICION. ..... 16

III.  MR. TORRES HAS NOT ABANDONED THE REMAINDER OF HIS
      FOURTH AMENDMENT CLAIMS NOR THE ISSUE OF QUALIFIED
      IMMUNITY. ........................................................................ 23

      A.   The District Court Must Address Mr. Torres's Remaining Fourth
           Amendment Claims on Remand. ..................................... 23

      B.   Sgt. Ball Is Not Entitled to Qualified Immunity. .................... 24

CONCLUSION ........................................................................................ 27

CERTIFICATE OF COMPLIANCE ........................................................ 28

CERTIFICATE OF SERVICE ................................................................. 29

i

# TABLE OF AUTHORITIES

**Cases**

Adams v. Williams,
    407 U.S. 142 (1973)..............................................................1, 16, 22

Alabama v. White,
    496 U.S. 325 (1990)..................................................................1, 16

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)............................................................4, 7, 10, 13

Barwick v. Celotex Corp.,
    736 F.2d 946 (4th Cir. 1984) ...............................................................14

Belk, Inc. v. Meyer Corp.,
    679 F.3d 146 (4th Cir. 2012) ...............................................................22

Brown v. Rose's Stores, Inc.,
    145 F.3d 1323 (4th Cir. 1998) ............................................................10

Cawthorn v. Amalfi,
    35 F.4th 245 (4th Cir. 2022) ...............................................................23

Davis v. Zahradnick,
    600 F.2d 458 (4th Cir. 1979) ...............................................................11

Erickson v. Pardus,
    551 U.S. 89 (2007)..............................................................................12

Exec. Bus. Media, Inc. v. U.S. Dep't of Defense,
    3 F.3d 759 (4th Cir. 1993) ...................................................................24

Florida v. J.L.,
    529 U.S. 266 (2000).....................................................................passim

Florida v. Royer,
    460 U.S. 491 (1983)............................................................................13

Ford Motor Co. v. McDavid,
    259 F.2d 261 (4th Cir. 1958) .................................................................9

Glorvigen v. Cirrus Design Corp.,
    581 F.3d 737 (8th Cir. 2009) .................................................................9

Henderson v. Shulkin,
    720 F. App'x 776 (7th Cir. 2017) .......................................................13

Illinois v. Gates,
    462 U.S. 213 (1983)........................................................................6, 16

Illinois v. Wardlow,
    528 U.S. 119 (2000)............................................................................23

Lampkins v. Thompson,
    337 F.3d 1009 (8th Cir. 2003) ............................................................12

Raynor v. Pugh,
    817 F.3d 123 (4th Cir. 2016) ............................................................11

Repub. Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,
    527 F.2d 1002 (4th Cir. 1975) ........................................................23

Rudin v. Lincoln Land Cmty. Coll.,
    420 F.3d 712 (7th Cir. 2005) ..........................................................13

Sartor v. Ark. Gas Corp.,
    321 U.S. 620 (1944)........................................................................15

Saucier v. Katz,
    533 U.S. 194 (2001).........................................................................25

Springer v. Durflinger,
    518 F.3d 479 (7th Cir. 2008) ..........................................................13

State v. Blankenship,
    748 S.E.2d 616 (N.C. Ct. App. 2013) ......................................17, 21

State v. Hughes,
    539 S.E.2d 625 (N.C. 2000).................................................18, 21, 22

State v. Johnson,
    693 S.E.2d 711 (N.C. Ct. App. 2010) .............................................19

Terry v. Ohio,
    392 U.S. 1 (1968)................................................................19, 20, 25

Tolan v. Cotton,
    572 U.S. 650 (2014).....................................................................5, 10

United States v. Arlington Cnty., Va.,
    702 F.2d 485 (4th Cir. 1983) ..........................................................11

United States v. Christmas,
    222 F.3d 141 (4th Cir. 2000) ..........................................................17

United States v. Cortez,
    449 U.S. 411 (1981)..........................................................................7

United States v. DiSantis,
    565 F.3d 354 (7th Cir. 2009) ..........................................................12

United States v. Lopez-Lopez,
    282 F.3d 1 (1st Cir. 2002).................................................................9

United States v. Perkins,
    363 F.3d 317 (4th Cir. 2004) .....................................................17, 18

United States v. Sauceda-Mendez,
    26 F.3d 1119 (5th Cir. 1994) ............................................................9

Vathekan v. Prince George's Cnty.,
    154 F.3d 173 (4th Cir. 1996) .....................................................10, 11

Yates v. Terry,
    817 F.3d 877 (4th Cir. 2016) ..........................................................26

iii

Zivotofsky v. Clinton,
   566 U.S. 189 (2012)............................................................................23

**Statutes**
28 U.S.C. § 1746 ................................................................................11

**Other Authorities**
Cars.com, Honda Accord (last visited Jan. 31, 2023),
   https://www.cars.com/research/honda-accord/ ....................................6
Google Maps, Driving Directions from 130 Flat Top Mountain Road, Fairview,
   NC to 45 Edwards Road, Fairview, NC, Google.com (last visited Feb. 12, 2023),
   https://goo.gl/maps/MtpynVauEBg9fNcP6 ........................................19
Topographic-Map.com, Buncombe County topographic map (last visited Feb. 6,
   2023), https://en-gb.topographic-map.com/map-m8t414/Buncombe-
   County/?center=35.55366%2C-82.38904&zoom=16 ..........................8

**Rules**
Fed. R. App. P. 32(a)..........................................................................28
Fed. R. App. P. 32(f) ..........................................................................28
Fed. R. Evid. 613 ...............................................................................12
Fed. R. Evid. 801(d)(2) ......................................................................12

## <u>REPLY BRIEF</u>

In his opening brief, Jonathan Torres argued that Sergeant Nathan Ball did not have reasonable articulable suspicion to pull him over in the early morning hours of March 3, 2018. His argument was *not* that Sgt. Ball would not have had reasonable articulable suspicion to conduct the stop *had* Sgt. Ball known that it was Mr. Torres driving the car (thus, Sgt. Ball's incessant focus on Mr. Torres having warrants out for his arrest is misplaced). Rather, Mr. Torres argued that Sgt. Ball did not have reasonable articulable suspicion to believe that, prior to conducting the traffic stop, Mr. Torres was driving the green Honda Sgt. Ball pulled over. This is an entirely distinct Fourth Amendment question. <u>See</u> Opening Br. At II.A.

Turning to that question, as Mr. Torres explained in his opening brief, the only *legally justifiable* basis that Sgt. Ball possibly had to make the stop was his claim that he knew Mr. Torres was driving the car given Mr. Torres's outstanding warrants. But for this to be the basis of the stop, Sgt. Ball needed to point to facts to support a reasonable articulable suspicion that he knew Mr. Torres was the driver. And the only facts he has pointed to are vague details provided in a skeletal, largely anonymous, uncorroborated tip. That tip, without more, was not a sufficient basis for Sgt. Ball to conduct a traffic stop. <u>See, e.g.</u>, <u>Florida v. J.L.</u>, 529 U.S. 266, 270 (2000); <u>Adams v. Williams</u>, 407 U.S. 142, 147 (1973); <u>Alabama v. White</u>, 496 U.S. 325, 329 (1990).

1

Moreover, Sgt. Ball has serious credibility problems that a jury must resolve. First, Sgt. Ball changed the basis for the stop during this litigation after his own body camera footage disproved his initial narrative. <u>See</u> Opening Br. at 13. A jury could find this change in story suspect. Second, during this litigation, Sgt. Ball has consistently added details to the tip in an attempt to cloak it with reliability. But as explained below, not only are his attempts unsuccessful (under any reading of the record, the tip does not provide reasonable articulable suspicion), it is also another reason for a jury to disbelieve Sgt. Ball in a case where his credibility is key.

As explained below, disputes of material fact preclude summary judgment in Sgt. Ball's favor. In fact, when the facts are viewed in the light most favorable to Mr. Torres, as they must be at the summary judgment stage, it is clear that Sgt. Ball did not have reasonable articulable suspicion to stop the green Honda Mr. Torres was driving based on the alleged confidential source of information ("CSI")'s tip.

This Court should reverse.

## I.   GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT IN SGT. BALL'S FAVOR.

There are three categories of disputed material facts that preclude summary judgment in Sgt. Ball's favor on Mr. Torres's Fourth Amendment claim: first, why Sgt. Ball conducted the traffic stop; second, what an alleged CSI told Sgt. Ball prior to him conducting the traffic stop; and third, what Sgt. Ball allegedly observed prior to conducting the stop. *Any* of these disputes would be enough to preclude summary judgment. Together, it is clear that there are questions of material fact that a factfinder must resolve.

### A.   There Are Material Disputes of Fact Over the Reason for the Stop.

First, Sgt. Ball claimed in his contemporaneous arrest report that he pulled over the green Honda after running the license plate and learning that it had been stolen. J.A. 122; J.A. 126. But once Mr. Torres initiated this action, Sgt. Ball's body camera footage clearly showed that Sgt. Ball actually pulled over the dark green Honda Accord *before* calling in the license plate. J.A. 95. In fact, Sgt. Ball didn't learn that the car had been stolen until after handcuffing Mr. Torres. J.A. 369 at 01:14–01:22.

Without the excuse of a stolen car to justify the stop, Sgt. Ball claimed in an Affidavit, written over two years after the arrest, that the reason he pulled over the green Honda was because he "believed that . . . Torres was operating the Vehicle." J.A. 93.

3

Trying to clean up this obvious dispute of fact, Sgt. Ball argues on appeal that "[n]owhere in Sergeant Ball's case synopsis does he state that he stopped Torres *because* [the car] was reported stolen." Appellees' Br. at 26. Viewing the evidence in the light most favorable to Mr. Torres and drawing all inferences in his favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), that is exactly what Sgt. Ball said. Sgt. Ball laid out a clear chronology of what happened. In his "Case Synopsis," he first describes how he followed the vehicle ("Sgt. Ball pulled out behind same . . . Sgt. Ball continued to follow"). J.A. 122. In the next sentence, he lists the vehicle's license plate number. J.A. 122. And *immediately thereafter*, he states "[a] NCIC inquiry showed that the vehicle was stolen," and then proceeds to describe his decision to activate his blue lights. J.A. 122.[1] The placement of the sentence about the NCIC inquiry within Sgt. Ball's linear narrative describing his execution of the stop creates the distinct impression, in ordinary English usage, that Sgt. Ball's initial justification for the stop was the vehicle's status as stolen. It would be strange indeed for everything else in Sgt. Ball's Police Report to seemingly be in chronological order, and yet for that key detail to be shockingly out of place. Regardless, Mr. Torres's reading of the report is certainly reasonable, and thus that must be the reading that this Court adopts at the summary judgment stage. See Tolan

---

[1] In Sgt. Ball's "Reporting Officer Narrative," also written shortly after the arrest, he arranges his sentences identically. J.A. 126.

4

v. Cotton, 572 U.S. 650, 651 (2014). With this reading, it reasonable to infer that

Sgt. Ball abandoned the stolen-vehicle justification for the stop after he reviewed his

body camera footage and realized it had been definitively disproved.[2]

### B.  There Are Material Disputes of Fact Over What Sgt. Ball Was Told by the CSI Before He Conducted the Stop.

Second, there is a dispute of material fact as to the information Sgt. Ball had

that would have led him to believe that Mr. Torres was driving a green Honda in the

first place. In his Police Report, which was written the day of Mr. Torres's arrest,

Sgt. Ball states that a CSI had told him that Mr. "Torres had been *frequenting* 130

Flat Top Mountain Road" and had been operating "a dark green Honda car with dark

tinted windows." J.A. 126 (emphasis added). But his story changed during this

litigation. Now, Sgt. Ball claims that a CSI "told [him] that [Mr.] Torres had been

*staying* at 130 Flat Top Mountain Road," a claim that appeared for the first time in

his Affidavit. J.A. 91 (emphasis added). There is a big difference between an

informant telling police vaguely that someone has "frequented" an address versus an

informant telling police that is where someone is "staying." And in the Affidavit,

---

[2] Sgt. Ball repeatedly asserts in his Response that Mr. Torres did not stop after he activated his blue lights. At no point has Sgt. Ball offered this as a justification for stopping Mr. Torres. Moreover, his own bodycam footage contradicts this narrative, as it shows Mr. Torres slowing down and turning into a dead-end driveway after Sgt. Ball activated his blue lights, J.A. 92–93, a normal response to being pulled over. This is yet another attempt by Sgt. Ball to rationalize his actions *post hoc*.

Sgt. Ball claimed that the CSI had told him Mr. Torres was driving a dark green Honda *Accord*, again attempting to narrow the class of people that would fit within the alleged CSI's tip. While the difference may seem semantic at first blush, whether Mr. Torres was, according to the tipster, driving a green Honda (which could range from a coupe to an SUV) or a green Honda Accord matters,[3] considering that Sgt. Ball relied on this tip to pull over a car at gunpoint.

A factfinder should have an opportunity to assess Sgt. Ball's credibility given the fact that he shaded in the lines of the alleged CSI's information in an attempt to make it more detailed in the throes of litigation. The specificity of a tip is relevant to the reasonable suspicion question. Illinois v. Gates, 462 U.S. 213, 233–34 (1983). A factfinder could believe that Sgt. Ball's initial description of the tip is the more accurate one, and that the subsequent details were added to cloak the tip with the air of reliability. This is especially so given that in his Police Report, Sgt. Ball simply mentioned that he received information from a CSI, see J.A. 122, but then in his Affidavit, he added that the informant had given him reliable information in the past, see J.A. 91. And if a factfinder were to believe the first description of the tip to be

---

[3] The Honda Accord has undergone several design changes since its introduction in 1976, including a substantial redesign in the late 1990s. See Cars.com, Honda Accord (last visited Jan. 31, 2023), https://www.cars.com/research/honda-accord/. The Police Report, in fact, lists the model year of the Honda. J.A. 133.

more accurate, then, as explained below, it is clear that Sgt. Ball did not have reasonable articulable suspicion to conduct the traffic stop.

Sgt. Ball tries to shrug away the inconsistencies in his evolving narrative as "merely colorable" and "minor." Appellees' Br. at 25. To the contrary, they are critical to understanding what exactly Sgt. Ball knew when he pulled over the green Honda, and as he concedes in his brief, what he knew is the central question in determining whether he had reasonable articulable suspicion to conduct the traffic stop. Appellees' Br. at 21. Moreover, reasonable suspicion determinations are made based on a totality of the circumstances, making even minor disputes of fact increasingly more important when aggregated as a whole. United States v. Cortez, 449 U.S. 411, 417 (1981). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a [court] . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

## C.   **There Are Material Disputes of Fact Over What Sgt. Ball Saw Before the Stop.**

Third, there are disputes of fact over what Sgt. Ball saw before he decided to follow the green Honda. In his Police Report, Sgt. Ball said that he drove by 130 Flat Top Mountain Road at 3:00 AM and claimed that "he saw what he believed to be a Honda Accord with the trunk open," and further noticed "that someone was walking around." J.A. 122. In his Affidavit, however, Sgt. Ball again adds more

7

details, alleging that he saw a "male person walking around" a dark green Honda Accord. J.A. 92. But whether Sgt. Ball could make out any details at all is questionable—the visibility of the driveway at 130 Flat Top Mountain Road is hotly contested.

Mr. Torres alleged that given the topography, it would have been impossible for Sgt. Ball to see into the driveway at 130 Flat Top Mountain Road. J.A. 304.[4] Objective evidence supports his assertion. It is improbable that Sgt. Ball could discern the color of a dark green car, let alone its make and model, at 3:00 AM in a poorly lit, heavily forested area. Additionally, the length and angle of the driveway makes it difficult to see *anything* from the street, regardless of the lighting. *See* Opening Br. at 4. And what Sgt. Ball saw from the street is a material fact in dispute at this juncture because it goes directly to whether Sgt. Ball took any steps to corroborate the alleged CSI's tip. J.L., 529 U.S. at 270.

On appeal, Sgt. Ball attempts to explain how he was able to make out these granular details by hypothesizing about the size of the moon and the number of leaves on the trees. Appellees Br. at 3, 36. But the mere contrary assertion of facts

---

[4] Topographic data shows that 130 Flat Top Mountain Road lies sharply downhill from the main road. See Topographic-Map.com, Buncombe County topographic map (last visited Feb. 6, 2023), https://en-gb.topographic-map.com/map-m8t414/Buncombe-County/?center=35.55366%2C-82.38904&zoom=16 (displaying topographic gradient along Flat Top Mountain Road near 130 Flat Top Mountain Road).

in a brief does not render the initial observation, made in Mr. Torres's Response in Opposition to Summary Judgment, "so tenuous that it rests merely upon speculation and conjecture." Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir. 1958). Indeed, this just goes to show that there are factual disputes that must be resolved at trial. See, e.g., Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 745–46 (8th Cir. 2009) (considering evidence on visibility offered in a meteorological expert report); United States v. Sauceda-Mendez, 26 F.3d 1119, *3 (5th Cir. 1994) (considering testimony of a weather expert regarding visibility conferred by the light of a full moon). Mr. Torres and Sgt. Ball can both testify at trial, they can bring in additional witnesses including any experts if necessary, and a jury can decide who is more credible. See, e.g., United States v. Lopez-Lopez, 282 F.3d 1, 15-16 (1st Cir. 2002) (holding that the district court did not abuse its discretion by allowing a courtroom demonstration to replicate the effect of a spotlight briefly illuminating the area where a suspect was allegedly seen).

Sgt. Ball's ability to see the individual outside the car at 130 Flat Top Mountain Road is imperative to analyzing whether or not he had successfully corroborated the tipster's information and, by extension, whether the information he had at the time he pulled over the green Honda was sufficient to confer reasonable articulable suspicion. The visibility issue, like the other extant questions of material fact, is contested, material, and inappropriate for resolution at summary judgment.

### D.   This Court Must Consider Mr. Torres's Sworn Pleadings When Deciding Whether There Are Issues of Material Fact in Dispute.

Sgt. Ball urges this Court to disregard Mr. Torres's sworn statements by arguing that they "self-serving" and thus owed no deference in the summary judgment analysis. See Appellees' Br. at 30, 35. But it is axiomatic that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Tolan, 572 U.S. at 651 (quoting Anderson, 477 U.S. at 255). It is also well established that a sworn statement at summary judgment is considered on par with witness testimony. See Vathekan v. Prince George's Cnty., 154 F.3d 173, 180 (4th Cir. 1996) (crediting witness's sworn statement as witness testimony). And while it is true "[o]nly reasonable inferences warrant consideration," Brown v. Rose's Stores, Inc., 145 F.3d 1323, *2 (4th Cir. 1998) (table), nothing that Mr. Torres has asserted is inherently unreasonable; his assertions are simply inconsistent with Sgt. Ball's statements. In fact, Sgt. Ball's argument is confusing, because while he derides Mr. Torres's sworn statements as "self-serving," he also asserts that his own Affidavit should be given ultimate deference. Appellees' Br. at 33–34 ("The value of Sgt. Ball's affidavit supersedes that of the case synopsis."). Sgt. Ball cannot have his cake and eat it too: If Mr. Torres's statements are "self-serving" and undeserving of deference in the summary judgment analysis, so too are his own. This is why this Court has unequivocally held that "where 'affidavits present conflicting versions of the facts which require credibility determinations,' summary judgment cannot lie."

Raynor v. Pugh, 817 F.3d 123, 130 (4th Cir. 2016) (quoting Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)); see also Vathekan, 154 F.3d at 180 (holding that a conflict between sworn statements "creates a question about . . . credibility . . . for the jury to resolve"). Consistent with binding precedent, this Court must consider Mr. Torres's sworn statements at the summary judgment stage.[5]

In footnotes, Sgt. Ball cursorily argues that Mr. Torres did not properly swear to the truth of his affidavit pursuant to 28 U.S.C. § 1746, because he submitted his verification in a subsequent filing. See Appellees' Br. at 27 n.4, 33 n.7. This is pure distraction. The text of the statute nowhere indicates that such an attestation need be made in the same court filing. To the contrary, such a declaration rises to the evidentiary significance of an affidavit and is thus no less credible than Sgt. Ball's prepared-for-litigation affidavit. United States v. Arlington Cnty., Va., 702 F.2d 485, 490 (4th Cir. 1983) (holding that a "letter declar[ing] that [its contents were] true under penalty of perjury" under 28 U.S.C. § 1746 was "conferred . . . the status of an affidavit"). Further, Mr. Torres litigated this case *pro se*, from prison. If there are

_____

[5] At several points throughout his brief, Sgt. Ball faults Mr. Torres for his lack of sophistication during discovery. See, e.g., Appellees' Br. at 30, 31, 35. Mr. Torres was incarcerated for the full span of this litigation, from his filing of the complaint to present, and was transferred to different facilities six times. See J.A. 41, J.A. 43, J.A. 45, J.A. 56, J.A. 57, J.A. 173. Further, Mr. Torres's request for counsel was denied. Dkt. No. 24. And yet, despite these difficulties and the fact that he was proceeding alone against able counsel, Mr. Torres was *still* able to surface disputes of material fact that preclude summary judgment.

any doubts about the legal validity of his attestations, these doubts should be resolved in his favor. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (requiring liberal construction of *pro se* pleading).

> **E.    This Court Must Consider Sgt. Ball's Police Report and How It Differs From His Summary Judgment Affidavit when Deciding Whether There Are Issues of Material Fact in Dispute.**

Sgt. Ball then insists that this Court should only consider his sworn Affidavit because his Police Report, including the Case Synopsis and Reporting Officer Narrative, is inadmissible. Appellees' Br. at 34 n.8. As a threshold matter of evidence law, Sgt. Ball's Police Report is admissible for impeachment as a prior inconsistent statement and a statement of a party-opponent. Fed. R. Evid. 801(d)(2), 613; <u>see, e.g.</u>, <u>United States v. DiSantis</u>, 565 F.3d 354, 360 (7th Cir. 2009) (admitting a police report against a police officer as the statement of a party opponent); <u>Lampkins v. Thompson</u>, 337 F.3d 1009, 1013 (8th Cir. 2003) (observing in a <u>Bivens</u> action that law enforcement reports are generally admissible for impeachment as prior inconsistent statements). Further, Sgt. Ball's Police Report, including his Case Synopsis and the Reporting Officer Narrative, were offered *by him* as exhibits to his Motion for Summary Judgment. <u>See</u> J.A. 122; J.A. 126 (both marked "Exhibit D" and ECF No. 30–6). Certainly, Sgt. Ball cannot assert that his own documents may not be considered at summary judgment after he himself admitted them in support of his own summary judgment motion.

Beyond this, though, Sgt. Ball is wrong in his assertion that the inconsistencies between the Police Report and his Affidavit do not create issues of material fact. It is well-established that "evaluations of witness credibility are inappropriate at summary judgment." Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008); see also Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Here, the entire dispute turns on which iteration of Sgt. Ball's shifting version of events a factfinder should believe, or more fundamentally, whether a factfinder should believe Sgt. Ball at all given his various accounts.

To be clear, Mr. Torres has put forward affirmative evidence showing that he was pulled over: his sworn statement and Sgt. Ball's body camera footage. The burden shifts now to Sgt. Ball to justify the stop. Florida v. Royer, 460 U.S. 491, 500 (1983) ("It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."). But regarding the justification for the stop, Sgt. Ball has "changed [his] story, so there is reason to question the sincerity of the reason provided now." Henderson v. Shulkin, 720 F. App'x 776, 783 (7th Cir. 2017). Because "there is a question of fact as to the believability" of Sgt. Ball, "at a bare minimum it suffices to defeat [his] summary judgment motion." Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 726 (7th Cir. 2005).

13

Sgt. Ball misreads the single case, <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946 (4th Cir. 1984), that he cites for the proposition that his contradictory statements cannot create a genuine issue of material fact. Appellee's Br. at 34. Sgt. Ball quotes <u>Barwick</u> for the proposition that a "genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the [*witness's*] testimony is correct." <u>Id.</u> (alterations in original, emphasis added). But Sgt. Ball's alterations radically change what this Court was saying.

In <u>Barwick</u>, this Court held that a genuine issue of material fact is not created when the "only issue of fact is to determine which of the two conflicting versions of the *plaintiff's* testimony is correct." 736 F.2d at 961 (emphasis added). This Court went on to explain the basis for this holding: "If a party . . . could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." <u>Id.</u> (quotation marks omitted). This of course makes sense—a party cannot point to their own change in story to create an issue of material fact as a basis to preclude summary judgment. But conversely, when *the moving* party has repeatedly changed his story, and urges the court to overlook the material changes in his story and grant summary judgment in his favor, as is the case here, then those changes in story are clearly relevant to, and in fact preclude, summary judgment in his favor. <u>Sartor v. Ark. Gas Corp.</u>, 321 U.S. 620, 628 (1944)

14

(emphasizing that resolving a case on summary judgment robs the factfinder of the ability to assess "trustworthiness of testimony" by cross-examination).

**II.** **SGT. BALL LACKED REASONABLE SUSPICION TO BELIEVE MR. TORRES WAS DRIVING THE HONDA ACCORD BECAUSE THE VIRTUALLY ANONYMOUS CSI TIP WAS TOO VAGUE AND UNCORROBORATED TO SUPPORT REASONABLE SUSPICION.**

The CSI tip, which Sgt. Ball relies on as justification for the stop, Appellees' Br. at 5, could not provide reasonable articulable suspicion. As the opening brief explains, given that we know little about the alleged CSI, this Court must treat the tipster as anonymous. See Opening Br. at 33–34; J.L., 529 U.S. at 270 ("Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." (citing Adams, 407 U.S. at 146-147; White, 496 U.S. at 329) (internal quotations omitted)). Based on Sgt. Ball's Police Report, we know nothing about the alleged CSI. See J.A. 122. And even if this Court were to credit Sgt. Ball's summary judgment Affidavit (which, as explained above, this Court should not), all we know now is that the CSI "provided [Sgt. Ball] with reliable information in the past." J.A. 91. This tip, even crediting the most favorable version of Sgt. Ball's different narratives, could not provide the sole basis for him to conduct a Fourth Amendment stop. The Supreme Court has been clear on this point: "An officer's statement that 'affiants have received reliable information from a credible person['] . . . is inadequate." Gates, 462 U.S. at 239. Sgt. Ball could not simply rely on "mere ratification of the bare conclusions of others." Id.

Even though Sgt. Ball tried to endow the tipster with reliability during the course of this litigation by adding for the first time that the tipster had provided him "reliable information in the past," Sgt. Ball elaborates no further. He has not provided the gender, age, or basis of knowledge of his CSI, examples of the CSI's reliability in the past, or any information on the CSI's connection to Mr. Torres. See J.L., 529 U.S. at 268 ("nothing is known about the informant"); United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004) (stating that a phone tip "had some characteristics of an anonymous tip because the woman did not give her name" when providing the tip"). Even now, Sgt. Ball has not offered any information about the nature of the tip such as how he spoke to the CSI, whether on the phone or in person, or what day or time they spoke. See United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) ("Unlike the anonymous tipster, a witness who directly approaches a police officer can also be held accountable for false statements.").

The absolute lack of information surrounding this CSI seriously undermines their credibility and fails to provide the assurance of reliability and accountability which makes known informants preferable to anonymous informants. See State v. Blankenship, 748 S.E.2d 616, 618 (N.C. Ct. App. 2013) ("[T]he officers did not have the opportunity to judge [the informant]'s credibility firsthand or confirm whether the tip was reliable, because [the informant] had not been previously used and the officers did not meet him face-to-face."); State v. Hughes, 539 S.E.2d 625, 629 (N.C.

17

2000) ("The only evidence showing that the identity of this informant was known is [the arresting officer]'s conclusory statement that the informant was confidential and reliable.").

The tip simply connects Mr. Torres to 130 Flat Top Mountain Road (though whether Mr. Torres was "staying at" or "frequenting" this address, Sgt. Ball changes his story), and to a dark green Honda (or being charitable to Sgt. Ball's litigation Affidavit, a Honda Accord). That's it. The tip is not predictive of Mr. Torres's movements in any way nor does it allege any kind of ongoing criminal conduct. See J.L., 529 U.S. at 271 ("All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew [the information] . . . nor supplied any basis for believing he had inside information about" the suspect.). The tip does not suggest that the CSI had any proximity to Mr. Torres or that their tip was based on any personal observations. Cf. Perkins, 363 F.3d at 325 (finding that predictive information isn't necessary when "[t]he caller . . . [is] clearly in a position to know about the reported activity that [gives] rise to . . . suspicion"). The tip does not even suggest how often Mr. Torres "frequented" 130 Flat Top Mountain Road or what that vague descriptor even means.

So, Sgt. Ball stopped a green Honda near the address without doing any further investigation to ensure that Mr. Torres was the driver—it is not even clear that he knew the driver's gender, race, or approximate age before the stop. And on

18

this record, more investigation was critical given that his own police records undercut the tipster's information. The Attempt to Locate bulletin and the information provided by Detective Eric Taylor had Mr. Torres living at an entirely different address: 45 Edwards Road. J.A. 103.  This is a 4.8 mile drive from 130 Flat Top Mountain Road.[6] And it turns out that the tipster was in fact incorrect, as Mr. Torres was not "staying at" 130 Flat Top Mountain Road—rather, his friend lived there. See J.A. 302 (stating that Mr. Torres lived in Hendersonville at the time of his arrest).

If this tip were enough for reasonable suspicion, then Sgt. Ball could have stopped *any* green Honda in between 130 Flat Top Mountain Road, 45 Edwards Road, and "a location on Hickory Tree Rd" (a third possible location provided to Sgt. Ball by Agent Burrell, J.A. 122). Such a drag net approach to policing is inconsistent with the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 21–22 (1968) (stating that Fourth Amendment forbids stops "based on nothing more substantial than inarticulate hunches.") (internal quotations omitted). As the North Carolina Court of Appeals held in State v. Johnson, "[w]here the detail contained in the tip

---

[6] See Google Maps, Driving Directions from 130 Flat Top Mountain Road, Fairview, NC to 45 Edwards Road, Fairview, NC, Google.com (last visited Feb. 12, 2023), https://goo.gl/maps/MtpynVauEBg9fNcP6.

merely concerns identifying characteristics, an officer's confirmation of these details will not legitimize the tip." 693 S.E.2d 711, 715 (N.C. Ct. App. 2010).

Sgt. Ball barely engages with Mr. Torres's reasonable suspicion argument and the unreliability of his alleged CSI's tip. First, he argues that Mr. Torres did not raise this argument below and thus it is waived. See Appellees' Br. at 31. That's incorrect. Mr. Torres's first cause of action in his original Section 1983 complaint was for the violation of his Fourth Amendment rights due to an absence of probable cause and reasonable suspicion. J.A. 19 ("[N]or was there any reasonable articulable suspicion to make a [sic] investigative stop based upon Terry v. Ohio."). In his Response to Defendant's Motion for Summary Judgment, Mr. Torres points out that Sgt. Ball's original report does not indicate "whether this informant was credible and reliable, based on information he or she had furnished in the past," whether the tip was based on firsthand information, or "whether the officer took the time to engage in extensive independent corroboration themselves of the details of informant's tip." J.A. 303–304. And in his affirmative Motion for Summary Judgment, Mr. Torres once again argued that Sgt. Ball lacked reasonable articulable suspicion and argued that Sgt. Ball's CSI lacked the requisite credibility in order to provide such reasonable suspicion at the time of the arrest. J.A. 189 ("Sergeant Ball did not have reasonable articulable suspicion to make an investigative stop on the plaintiff"); J.A. 190 (listing

factors that the Supreme Court has indicated are important to determining whether a tip is reliable).

Then Sgt. Ball argues that the tip was reliable because it "provided [Sgt. Ball] with the make, model, color, and specific feature of the vehicle he could find Torres driving" along with "the specific address where he could, and ultimately did, find Torres." Appellees' Br. at 31. But again, without providing any information on *how* this CSI came across this information, that alone is not enough to make an anonymous tip reliable. See Hughes, 539 S.E.2d at 631 ("[T]he informant here gave comparatively vague information . . . [that] could be attributed to any number of travelers."); J.L., 529 U.S. at 269 ("Anonymous tips . . . are generally less reliable than tips from known informants and can form the basis for reasonable suspicion only if accompanied by specific indicia of reliability, for example, the correct forecast of a subject's 'not easily predicted' movements." (citations omitted)). Without verifying that the person Sgt. Ball saw in the driveway of 130 Flat Top Mountain Road was Mr. Torres, it could not be said that Sgt. Ball verified the CSI's "predictions" or corroborated the tip. See Blankenship, 748 S.E.2d at 619 ("[T]here is no dispute that the officers did not corroborate the tip. . . . [T]he officers did not have sufficient time to observe the vehicle being operated by defendant.") (internal quotations omitted); see also Hughes, 539 S.E.2d at 632 ("Without more, these details are insufficient corroboration because they could apply to many individuals.).

Likewise, the case law is clear that Sgt. Ball simply saying that "he knew this CI, and that the CI had provided him reliable information in the past," Appellees' Br. at 31, without more, is not enough to make a tip reliable. Adams, 407 U.S. at 146–47 (stating that the police officer "acted justifiably in responding to his informant's tip" because "[t]he informant was known to him personally and had provided him with information in the past" and because [t]he informant here came forward personally to give information that was immediately verifiable at the scene" since "the informant might have been subject to immediate arrest for making a false complaint."); Hughes, 539 S.E.2d at 628 ("Some objective proof as to why this information was reliable and credible, other than just [the Officer]'s assertion . . . must support" the action taken by the police.).

Finally, Sgt. Ball argues that the tip was corroborated, but never explains how so. Thus, Sgt. Ball has waived any argument as to this point. See Belk, Inc. v. Meyer Corp., 679 F.3d 146, 152 n.4 (4th Cir. 2012) (finding an issued waived because a party "fail[ed] to develop th[e] argument to any extent in its brief"). Indeed, Sgt. Ball does not engage with any of the tip case law cited in Mr. Torres's opening brief.

## III.   MR. TORRES HAS NOT ABANDONED THE REMAINDER OF HIS FOURTH AMENDMENT CLAIMS NOR THE ISSUE OF QUALIFIED IMMUNITY.

### A.   The District Court Must Address Mr. Torres's Remaining Fourth Amendment Claims on Remand.

Mr. Torres's remaining Fourth Amendment claims hinge in part on whether on the initial stop was justified. Thus, contrary to Sgt. Ball's waiver argument, Appellees' Br. at 18–19, it was proper for Mr. Torres to argue in his opening brief that the district court must take a fresh look at those claims in the first instance should this Court reverse.

The district court's erroneous decision that Sgt. Ball had reasonable suspicion to stop the green Honda because he knew the driver was Mr. Torres fundamentally infected the district court's analysis of the remaining issues. Mr. Torres's remaining Fourth Amendment claims and related state law claims all turn on whether Sgt. Ball had probable cause—an issue that, in and of itself, would be moot if this Court finds that Sgt. Ball lacked reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Under these circumstances, it is regular practice for appellate courts to reverse and "'remand for resolution of any claims' a district court's 'error prevented [it] from addressing.'" Cawthorn v. Amalfi, 35 F.4th 245, 261 (4th Cir. 2022) (quoting Zivotofsky v. Clinton, 566 U.S. 189, 201 (2012)). See also, e.g., Repub. Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 527 F.2d 1002, 1004 (4th Cir. 1975) (directing that "[u]pon remand . . . the district court should consider and dispose of

23

[one] remaining issue"); Exec. Bus. Media, Inc. v. U.S. Dep't of Defense, 3 F.3d 759, 761 (4th Cir. 1993) (same). Should the Court reverse the district court's grant of summary judgment and allow Mr. Torres's case to proceed past summary judgment, this Court should further order the district court to reexamine Mr. Torres's remaining claims.

### B. Sgt. Ball Is Not Entitled to Qualified Immunity.

Sgt. Ball finally argues that he is entitled to qualified immunity, and that Mr. Torres abandoned any argument to the contrary by not addressing qualified immunity in his opening brief. See Appellees' Br. at 47 n.9,

Mr. Torres did not address qualified immunity in his opening brief because the district court did not address it in connection with the issues central to this case. The district court addressed qualified immunity in only two places: first, as an alternative ground for granting summary judgment with respect to Mr. Torres's excessive force claim, J.A. 337 n.14, and second, in a concluding footnote saying that because Mr. Torres's "forecast of evidence fails to show a constitutional violation, it likewise establishes the Defendants' entitlement to qualified immunity." J.A. 343 n.15. The district court never considered whether Sgt. Ball would be entitled to qualified immunity if he, in fact, violated Mr. Torres's Fourth Amendment rights by stopping him without reasonable suspicion. And with regard to the excessive force ruling, the district court did not consider whether qualified immunity would

24

attach if the force was used during an *unlawful* stop. Taken together, these conclusions mean that the district court, in fact, never addressed the qualified immunity questions relevant to this case, and therefore there was no holding for Mr. Torres to appeal. More directly, by contesting the legality of the stop, as Mr. Torres has from his initial complaint, J.A. 19, through this appeal, see generally Opening Brief at Section II, he contested any grant of qualified immunity predicated on the erroneous finding that the stop was legal. Thus, because there was no qualified immunity ruling to appeal, Mr. Torres could not have abandoned the issue.

As for the merits, the qualified immunity inquiry turns on whether Sgt. Ball violated Mr. Torres's clearly established Fourth Amendment rights. Saucier v. Katz, 533 U.S. 194, 201 (2001). Specifically, the question is whether Sgt. Ball stopped Mr. Torres without reasonable articulated suspicion. Terry, 392 U.S. at 27 (holding that a traffic stop without reasonable articulable suspicion violates the Fourth Amendment). If Sgt. Ball stopped Mr. Torres without reasonable articulated suspicion, he would have violated Mr. Torres's clearly established constitutional rights.

In arguing that he is entitled to qualified immunity, Sgt. Ball states perfunctorily that "he had reasonable and articulable suspicion," so "he committed no constitutional violation." Appellees' Br. at 49. But then, he gets the focus of the reasonable suspicion inquiry wrong, asserting that "it is not clearly established in the

Fourth Circuit that engaging in an investigatory stop of an individual for whom there are nearly a dozen outstanding warrants, for whom the officer has been [*sic*] reliable, corroborated information from a known confidential informant, and who refuses to stop constitutes a constitutional violation." Appellees' Br. at 49. If Sgt. Ball had reasonable articulable suspicion to believe that Mr. Torres was the driver, then of course he could have lawfully conducted the stop. The whole argument is that he did not have that requisite level of suspicion. And whether his tip was "reliable" and "corroborated" is also disputed. Sgt. Ball does not argue that if the tip was *not* found to be reliable or corroborated, as Mr. Torres argues, that he would nevertheless be entitled to qualified immunity. In resolving qualified immunity questions, a court must construe all facts in favor of the non-moving party. Yates v. Terry, 817 F.3d 877, 884 (4th Cir. 2016). In arguing that he is entitled to qualified immunity, Sgt. Ball assumes every factual dispute will break in his favor. That is inappropriate at summary judgment. When open factual questions impact the qualified immunity inquiry, this Court cannot grant summary judgment on qualified immunity grounds.

26

## <u>CONCLUSION</u>

For these reasons, this Court should reverse the judgment of the District Court

and remand for further proceedings.


Daniel S. Harawa (Counsel of Record)
Daniel J. Cook (Student Counsel)
Zachary L. Sanders (Student Counsel)
Sophie Spears (Student Counsel)
NEW YORK UNIVERSITY SCHOOL OF LAW
Federal Appellate Clinic
245 Sullivan Street
Room 620
New York, NY  10012
(212) 998-6430
dh33544@nyu.edu

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Rule 32(a) of the Federal Rules of Appellate Procedure undersigned counsel for appellant certifies that the accompanying brief is printed in Times New Roman 14-point font, and including footnotes, contains no more than 6,500 words. According to the word-processing system used to prepare the brief, Microsoft Word, the relevant sections of the brief under Rule 32(f) contain 6,468 words.

Daniel S. Harawa

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2023, I electronically filed the foregoing brief with the Clerk of the Court of the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

Daniel S. Harawa